UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 22-cv-23513-BLOOM/Torres**

JOSE GONZALEZ,

      Plaintiff,

v.

THE INDEPENDENT ORDER OF FORESTERS,

      Defendant.

_____/

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant The Independent Order of Foresters' ("Defendant") Motion for Summary Judgment, ECF No. [48] ("Motion"). Plaintiff Jose Gonzalez ("Plaintiff") filed a Response in Opposition, ECF No. [57] ("Response"), to which Defendant filed a Reply, ECF No. [61] ("Reply"). The Court has reviewed the Motion, all opposing and supporting submissions,[1] the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

## I.  BACKGROUND

This is an action brought by an insured against his insurer for damages stemming from an alleged underpayment in benefits after he submitted claims for his diagnosed chronic illness under the Accelerated Death Benefit Riders within the governing life insurance policies. Plaintiff was sold the policies by two independent producers, Elena Orekhova and Sydney Lagogiannis (Independent Producers) The Independent Producers are licensed insurance agents who sell

---

[1] Defendant filed a Statement of Undisputed Material Facts, ("SMF"), ECF No. [49]. Plaintiff filed a Response to Defendant's Statement of Undisputed Material Facts, ("RSMF"). ECF No. [57-1]. Plaintiff also filed his Declaration, ECF No. [57-2].

policies for various insurance companies, including Defendant. Plaintiff claims that the Independent Producers made representations that Defendant would pay out up to 90-100% of the face value of the policies if Plaintiff filed a claim under the Chronic Illness Riders. Plaintiff thereafter applied for Term Life Insurance Benefits through Defendant. Plaintiff's first policy was issued on February 3, 2017, with a face value of $160,000.00. Later in 2018, Plaintiff sought to increase the face value of his policy and applied for a second policy. The second policy was issued on August 28, 2018, with a face value of $200,000.00.

In June 2020, Plaintiff was diagnosed with chronic back pain, incontinence, and vertigo, and submitted claims. On June 28 and July 3, 2020, Defendant provided Plaintiff with quote sheets indicating the amount payable in accordance with the policies' Accelerated Death Benefit Chronic Illness Riders.  Plaintiff rejected the offers as he believed the payments were not congruent with the representations made to him by the Independent Producers who sold him the policies.

On September 21, 2022, Plaintiff filed this action in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida, wherein Plaintiff states he relied on oral representations made by both Independent Producers that the policies could act as mortgage protection plans because Defendant would pay him 90% of the certificate against the first policy, and 100% of the certificate of the second policy if had diagnosed chronic illnesses under the Chronic Illness Rider. In his Complaint, Plaintiff asserted the following claims: breach of contract regarding the first insurance policy (Count I); breach of contract regarding the second insurance policy (Count II); fraud in the inducement (Count III); unjust enrichment (Count IV); fraudulent misrepresentation (Count V); and negligent misrepresentation (Count VI). *See generally* ECF No. [1-1]. Defendant timely removed the action to this Court, ECF No. [1]. Following consideration

of Defendant's Partial Motion to Dismiss Count V and Count VI, ECF No. [18], this Court dismissed Count V. *See* ECF No. [29].

Defendant now seeks summary judgment on all remaining counts. Defendant contends that the undisputed material facts establish that the parties entered into two insurance contracts, and no reasonable juror could find that Defendant was in breach of contract when it provided Plaintiff benefits per the written contracts or that Defendant failed to honor oral representations made by Elena Orekhova and Sydney Lagogiannis (the "Independent Producers"). *See generally* ECF No. [48].

Plaintiff responds that genuine issues of material fact exist as to the representations made to Plaintiff by Defendant's Independent Producers and related to the terms of the contract. *See generally* ECF No. [57].

Defendant replies that the express terms of the contract govern the relationship and benefits owed and any oral representations made by the Independent Producers have no bearing on the obligations between Defendant and Plaintiff. ECF No. [61] at 1.

## II.   MATERIAL FACTS

Based on the Parties' briefing and the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

### a.   First Policy No. 8603229 is issued

In January 2017, Plaintiff spoke with Elena Orekhova, an independent producer licensed to sell insurance on behalf of Defendant, regarding an application for insurance. SMF ¶¶1,2; RSMF ¶¶ 1, 2. After several discussions and in-person visits, Plaintiff completed a term life insurance policy application with Defendant for $160,000.00 in coverage. SMF ¶ 5; RSMF ¶ 5. Relevant here, the Application's "Declarations and Agreements" states:

Case No. 22-cv-23513-BLOOM/Torres

I further understand and agree that: 2) No agent/producer, medical examiner or any other person, except Foresters Executive Secretary or successor positions, has power on behalf of Foresters to make, modify, or discharge an insurance contract. ECF [18-2] at 9, 18; SMF ¶ 9; RSMF ¶ 9.

Plaintiff electronically signed the application on January 29, 2017. SMF ¶ 10, RSMF ¶ 10. *See* ECF No. [18-1] at 9.

On February 3, 2017, Defendant issued Policy No. 8603229 with a face value of $160,000.00 ("First Policy") which includes the following language:

The entire contract consists of each of the following:
1. The insurance contract, including agreements and endorsements to it.
2. The application for this certificate and each attached rider, if any.
3. Notifications we send to you confirming changes made to this certificate or ride.
4. Our Instrument of Incorporation, Constitution, and the respective amendments.

No one, including the producer who provided you with this certificate, can make a promise or representation about the entire contract other than what is described in the entire contract. A change to the insurance contract is not valid unless the change is approved by our executive secretary and it is endorsed on, or attached to, the insurance contract.

ECF No. [1-1] at 27, 54; SMF ¶ 13; RSMF ¶ 13.

The First Policy includes an Accelerated Death Benefit Rider ("Rider") providing payments for Chronic, Critical and Terminal Illnesses and that any potential payments would have deductions for actuarial discounts, administrative fees, unpaid premium amounts, and that the amount of each payment would be determined by Defendant. ECF No. [1-1] at 68; SMF ¶ 16; RSMF ¶ 16.

The Rider states the following under the sub header, **Acceleration Amount Limits**:

For Chronic Illness - The maximum acceleration amount that can be accelerated in any 12-month period, as a result of the insured being diagnosed with a chronic illness, is 24% of the eligible death benefit on the effective date of the first payment due to a chronic illness.

ECF No. [1-1] at 41, 69; SMF ¶ 17; RSMF ¶ 17.

For "chronic illness and critical illness, the payment will be less . . . than the acceleration amount applicable to that payment." ECF No. [1-1] at 69; SMF ¶¶ 17, 18; RSMF ¶ 17, 18. The Rider further states "[t]he acceleration amount for a payment: must be an amount such that the total of the acceleration amounts does not exceed the lesser of 95% of the eligible death benefit on the effective date of the first payment and the maximum lifetime acceleration amount." ECF No. [1-1] at 41, 69; SMF ¶ 20; RSMF ¶ 20.

The First Policy directs any insured person or applicant to contact Defendant to resolve any questions regarding provisions in the insurance contracts:

> The certificate is part of a legal insurance contract between the owner and Foresters. The insurance contract sets forth, in detail, the rights and obligations for both you and us. Only the actual insurance contract provisions will control. It is important that you read your insurance contract carefully.

> The benefit provided under each rider, if any, is described in that rider.

> If you have questions about this certificate or a rider, your understanding of them or about information that you have heard, seen or read relating to them, please call us. Our current toll free number is 1-800-828-1540.

ECF [1-1] at 21, 48; SMF ¶ 22; RSMF ¶ 22.

### b.  Second Policy No. 8835542 is issued

In August 2018, Plaintiff spoke with one of the Independent Producers to increase the death benefit amount under the First Policy. SMF ¶ 24; RSMF ¶ 24. On August 19, 2018, Plaintiff completed an application for a new, second policy in order to increase his death benefit coverage. SMF ¶ 31.

On August 28, 2018, Defendant issued Policy No. 8835542 with a face value of $200,000.00 ("Second Policy") which contained the same Rider as the First Policy. SMF ¶ 33, 35; RSMF ¶ 33, 35. The parties do not dispute the operative effect of the Second Policy. *See*

"Declarations and Agreements" (SMF ¶ 29; RSMF ¶ 29); the "Entire Contract" clause (SMF ¶ 34; RSMF ¶ 34).

### c. Plaintiff submits claims pursuant to the Rider for Chronic Illness

In June 2020, Plaintiff filed a claim for his Chronic Illness, following a diagnosis of chronic back pain, incontinence, and vertigo, under the Rider for both the First Policy and the Second Policy. SMF ¶ 37; RSMF ¶ 37. Defendant provided Plaintiff with its quote sheet and offered its first payment on June 28, 2020, of $3,883.80 under the Second Policy and, on July 3, 2020, $3,432.26 under the First Policy. SMF ¶¶ 38, 40; RSMF ¶¶ 38, 40. Plaintiff rejected both offers. SMF ¶¶ 39, 41; RSMF ¶¶ 39, 41. Defendant thereafter updated its payment offers as follows: on September 1, 2021, a new offer of $3,297.82 was made under the First Policy, and $3,950.51 was made under the Second Policy. SMF ¶ 42; RSMF ¶ 42. Plaintiff rejected those offers. SMF ¶ 43; RSMF ¶

In the Complaint, Plaintiff alleges that, in reliance on Defendant's representations, he entered into the Policies. Plaintiff further asserts that after qualifying for an accelerated death benefit under the Policies based on a diagnosis of a chronic illness, he was offered a payment that was incongruent with the representations that had been made to him by the Independent Producers. As a result, Plaintiff asserts six claims against Defendant: breach of contract for the First Policy (Count I), breach of contract for the Second Policy (Count II), fraud in the inducement (Count III), unjust enrichment (Count IV), fraudulent misrepresentation (Count V), and negligent misrepresentation (Count VI). As stated, the Court granted Defendant's Motion to Dismiss Count V. *See* Order at ECF No. [29].

Defendant now seeks summary judgment on each remaining claim. It argues that the Policies delivered to Plaintiff contain language directly contradicting the alleged representations.

The Policies' Riders both specify a payout formula and repeatedly caution that payment under the Riders in the event of a chronic illness diagnosis will be less than the face value of the Policies. Defendant contends that this was also made clear to Plaintiff in the Accelerated Death Benefit Rider Disclosure, which Plaintiff also received during the insurance application process and prior to delivery of each Policy. Plaintiff concedes he read the Policies and the Accelerated Death Benefit Rider Disclosure, asked questions about the discrepancies between the information allegedly given to him by the producers and his interpretation of the Policies, and he did not return or rescind the Policies.

Moreover, Defendant contends that Plaintiff cannot sustain his breach of contract claims where he fails to assert any contractual challenge to Defendant's proffered payments and instead, only factually challenges the amounts of the proffered payments because they were at odds with alleged representations. However, Defendant's proffered payments were consistent with the Policies' terms. Moreover, under well-established Florida law, Plaintiff's claim for fraud-in-the-inducement fails because the Policies explicitly provided the benefits provided under the Rider. Additionally, Plaintiff's unjust enrichment claim fails under Florida law as the Policies are express contracts and Defendant offered Plaintiff the coverage expressed in those Policies. Finally, Plaintiff's negligent misrepresentation claim fails due to the Policies' terms.

Plaintiff responds that the representations made by the Independent Producers, as Defendant's agents, have a direct bearing on the contractual relationship and there exists a genuine issue of material fact as to whether the Independent Producers were authorized by Defendant to act on its behalf and make binding statements. Moreover, factual issues exist related to the fraud, negligent misrepresentation, and unjust enrichment claims.

Case No. 22-cv-23513-BLOOM/Torres

### III.    LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations[.]'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019); *See also Crocker v. Beatty,* 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-moving party's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant." (citation omitted)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990) (citation omitted).

## IV.   DISCUSSION

### A.  Breach of Contract - Counts I and II

The parties do not dispute that the First Policy and the Second Policy are the governing written contracts and that the terms within the Policies are clear. ECF No. [48] at 5, ECF No. [57] at 5.

Defendant contends that it is undisputed that it did not breach any provision in the Policies and Defendant properly calculated Plaintiff's benefits. *Id.* at 5. Defendant points out that Plaintiff's sole issue is that the amounts Defendant offered "were not congruent with the representations made by" the Independent Producers. ECF No. [48] at 4. Defendant contends that Plaintiff cannot "graft" hearsay statements into the written contracts as new terms. *Id.* For support, Defendant cites to "well-settled Florida law" that parole evidence cannot contradict, modify, or defeat "a complete and unambiguous written instrument." *J.M. Montgomery Roofing Co. v. Fred Howland, Inc.*, 98 So.2d 484, 485-86 (Fla. 1957).

Plaintiff responds that genuine disputes of material fact exist regarding the breach of contract claims. Plaintiff contends that the Independent Producers were vested with apparent authority to act on behalf of Defendant as agents. ECF No. [57] at 4. The oral representations made by the Independent Producers "if carried out within the scope of apparent authority, provide additional context and understanding of how benefits would be disbursed" and did "create binding terms in the contract." ECF No. [57] at 4-5. Plaintiff cites to *Fla. Power & Light Co. v. McRoberts*, 257 So.3d 1023 (Fla. 4th DCA 2018) for support of his argument that an agent has apparent authority to bind a principal.

Defendant replies that Plaintiff signed the "Declarations and Agreements" section affirming that he understood and agreed that "no agent/producer . . . or any other person, except

Foresters Executive Secretary or successor positions has power . . . to make, modify, or discharge an insurance contract" on its behalf. *Id*.

As an initial matter, the contracts provide that all rights and obligations are "determined by the laws of the state governing" which is Florida. ECF No. [1-1] at 21, 33 (Exhibit C, cover page, p. 14). Therefore, federal procedural rules and Florida state substantive law applies. 28 U.S.C. § 1652; *See Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1027 (11th Cir. 2017) ("As a federal court sitting in diversity jurisdiction, we apply the substantive law of the forum state, in this case Florida, alongside federal procedural law." (citing *Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011)).

Here, Florida law supports Defendant's position. Plaintiff concedes that the written terms of the Policies are unambiguous. His sole contention is that the two Independent Producers were vested with apparent authority and the oral representations made had the power to bind Defendant to those representations. However, Plaintiff has not indicated how Defendant vested them with this power, or any record evidence to support its position.

To prove that apparent authority existed, Plaintiff must show that the principal, here Defendant, knew and permitted the agents to assume power. As *U.S. Iron* made clear, "a principal is only bound to a contract entered by an agent if the agent had the authority to enter into the contract on behalf of the principal." *U.S. Iron FLA, LLC v. GMA Garnett (USA) Corp.*, 660 F.Supp. 3d 1212, 1221 (N.D. Fla. Mar. 2, 2023) (citations omitted). Apparent authority "is the authority that 'the principal knowingly permits the agent to assume or which he holds the agent out as possessing.'" *Id.*

*Fla. Power & Light Co. v. McRoberts*, 257 So.3d 1023 (Fla. 4th DCA 2018) is instructive. In *Fla. Power & Light*, a plaintiff believed he entered an agreement to sell Florida Power and Light

("FPL") land for a commission. *Id*. His belief was based on discussions, and a "solid handshake" with a person holding a senior title at FPL, and who the plaintiff recognized in part because he was featured in local newspapers for his role with that company. Plaintiff was also told "okay" when he asked if he would be paid a fair commission. *Id*. at 1025. Despite recognizing that some aspects of the discussion were "strange," the plaintiff proceeded. The court held that the plaintiff failed to establish apparent authority because there was no showing that the principal knowingly permitted the agent to assume the power the purported agent held out as possessing, nor did FPL hold the person out to have such power. *Id*. at 1026 (citing *H. S. A., Inc. v. Harris-In-Hollywood, Inc.*, 285 So.2d 690, 692–93 (Fla. 4th DCA 1973)). Further, FPL never ratified the purported agent's authority to bind it. *Id*. There existed no informal act that "could denote the holding out" of apparent authority on behalf of the principal. *Id*. at 1027 (citing *Lensa Corp. v. Poinciana Gardens Ass'n, Inc.*, 765 So.2d 296, 299 (Fla. 4th DCA 2000) (Gross, J., concurring)). Therefore, the court determined that apparent authority did not exist.

Here, Plaintiff's belief that the Independent Producers had apparent authority based on their statements or on the extent of their communications does not rise to a showing of apparent authority. As an initial matter, Plaintiff only argues that "if" it can be established that Defendant vested the Independent Producers with apparent authority, then the statements become integral to the contract. ECF No. [57] at 3. No record evidence has been presented that Defendant vested those agents with authority to make representations inconsistent with the language of the Policies. Moreover, it is undisputed that on all pertinent application materials, Defendant explicitly advised that *no one* has the power . . . "no agent/producer" except Defendant's Executive Secretary has power on behalf of Defendant to "make, modify, or discharge" any portion of the insurance

contracts. Plaintiff signed this portion of the "Declarations and Agreements" as a condition to receiving the Policies.

In his Response to Defendant's Statement of Undisputed Material Fact, Plaintiff disputes the categorization of the Independent Producers, citing to Florida Statutes, § 626.342(2). RSMF ¶ 2, 25. Plaintiff asserts that § 626.342(2) imposes direct liability on Defendant. However, that statute is inapplicable to the facts and Plaintiff's reliance is misplaced. First, § 626.342 carries the title "Furnishing supplies to unlicensed agent prohibited; civil liability." Here, the Independent Producers are licensed agents. Plaintiff does not dispute that the Independent Producers are licensed but introduced the inapplicable statute to assert that Defendant must assume liability for the oral misrepresentations. Additionally, Fla. Stat. § 626.342(2) provides that civil liability will attach to an agent who is *not* appointed to represent the insurer if certain factors are met. Here, there is no dispute that the Independent Producers were appointed by Defendant to issue policies. Moreover, even if § 626.342(2) did apply, it would only create an agency to the same extent and manner as if such agent was appointed or authorized by Defendant to act on its behalf. The statute is therefore irrelevant.

Considering the facts in the light most favorable to Plaintiff as the nonmovant and drawing all reasonable inferences in his favor, Defendant has established that the Independent Producers lacked the authority to alter the terms of the Policies and there are no material facts in dispute. Defendant's Motion as to Counts I and II is granted.

**B. Fraud in the Inducement - Count III**

The elements of fraudulent inducement are (1) a misrepresentation of fact; (2) the representer knew or should have known that the statement was false; (3) the representor's intention that the representation would induce reliance; and (4) plaintiff suffered injury in justifiable reliance

on the representation. ECF No. [48] at 5; *See Output, Inc. v. Danka Bus. Sys. Inc.*, 991 So.2d 941, 944 (Fla. 4th DCA 2008).

Defendant argues that Plaintiff's reliance on the representations of the Independent Producers was unjustified because Plaintiff knew the oral representations contradicted the terms of the written contract. Plaintiff responds that genuine issues of material fact exist regarding the nature of the oral representations made by the Independent Producers to Plaintiff. Plaintiff does not claim that he was unaware of the contradictions. Rather, Plaintiff argues that his contention "underscores the necessity for a trier of fact to determine the extent of any such knowledge and the impact on the inducement." *Id*. at 7.

Defendant replies that it is blackletter law that a party cannot recover for an alleged false statement or misrepresentation that is expressly contradicted in a later written contract. *GVK Int'l Bus. Grp. Inc. v. Levkovitz*, 307 So.3d 144 (Fla. 3d DCA 2020). For support, Defendant cites to cases where Florida courts precluded plaintiffs from claiming justified reliance existed if the false statements in question was obvious. *See Bessett v. Basnett*, 389 So.2d 995, 997 (Fla. 1980); *Addison v. Carballosa*, 48 So.3d 951 (Fla. 2d DCA 2010). Further, Defendant argues that because there are written contracts, a claim of justifiable reliance based upon an oral representation necessarily fails. A party with knowledge of a fully disclosed fact prior to entering an agreement who then proceeds to execute that agreement "with full knowledge of that fact . . . could not have been fraudulently induced." *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So.2d 536, 543 (Fla 5th DCA 2003); *See* ECF No. [48] at 8.

Defendant is correct and the governing law supports its argument, In *Bessett*, the Florida Supreme Court clarified what a Plaintiff must know and any duty to investigate when alleging inducement through false representation. 389 So.2d 995 (Fla. 1980). The court held that even if a

falsity could have been ascertained through an investigation, a party may rely on the truth of a representation "unless he knows the representation to be false or its falsity is obvious to him." *Id*. at 998. In *Addison*, the court affirmed summary judgment for a defendant who successfully established that any misrepresentation was easily discoverable. *Addison v. Carballosa*, 48 So.3d 951 (Fla. 2d DCA 2010). *Addison* notes that Florida courts have addressed the justifiable reliance element for claims of fraudulent inducement with consistency. *Addison* states that in Florida, "there may be cases in which the falsity of a statement is obvious, and under those circumstances no cause of action could be stated, [and] it would be entirely proper for a trial court to rule against the plaintiff as a matter of law." *Id*. at 955 (quoting *M/I Schottenstein Homes, Inc. v. Azam*, 813 So.2d 91, 95 (Fla.2002)). "Justifiable reliance . . . does not permit the recipient of a fraudulent misrepresentation to blindly rely upon it." *Id*. (quoting *Uvanile v. Denoff*, 495 So.2d 1177, 1180 (Fla. 4th DCA 1986)).

Here, Plaintiff knew that the oral misrepresentations contradicted the express terms of the Policies. The Court agrees with Defendant that this assertion is not conclusory as it is fully supported by the record. Not only did Plaintiff have knowledge of the contradiction, but Plaintiff also acted upon that knowledge when he inquired about the contradiction to the Independent Producers. Plaintiff identified the contradiction between the express and unambiguous terms of the contracts, and what the Independent Producers told him. Moreover, a plain reading of the Rider makes clear that for a chronic illness "the *maximum* amount that can be accelerated in any 12-month period is 24% of the eligible death benefit." ECF No. [18-2] at 2. (emphasis added). Immediately after that sentence, the Rider clarifies "[f]or critical and terminal illness, the maximum amount. . . is 95% of the eligible death benefit." *Id*. Defendant also expressly advised

in writing that the circumstances of each Chronic Illness claim would be analyzed and could result in "substantially less than the acceleration amount." *Id*.

Plaintiff relies on *Fowler v. Provident Life & Accident Ins. Co.*, 256 F.Supp.2d 1243, 1248 (N.D. Ala. 2003) *and Durham v. Bus. Mgmt. Associates*, 847 F.2d 1505 (11th Cir. 1998) and argues that questions of fact are best determined by a jury. Plaintiff's argument is unavailing. In *Fowler*, the only fact-intensive inquiry was the date the plaintiff discovered the fraud. *Fowler v. Provident Life & Accident Ins. Co.*, 256 F.Supp.2d 1243, 1248 (N.D. Ala. 2003). While not Florida law, *Fowler* serves to undercut Plaintiff's argument as it also held that only in narrow circumstances, specifically when a plaintiff is illiterate, or the terms are ambiguous, can allegations of fraud overcome the presence of express terms in a contract. *Id*. at 1248. In *Fowler*, the court further determined that reliance on alleged representations contrary to the written terms in the contract was not reasonable. *Id*. at 1249. Moreover, *Durham* aligns with *Bessett* and *Addison*, finding that "summary judgment is appropriate only where no reasonable jury could differ as to whether the plaintiffs exercised due diligence in discovering the fraud." *Durham*, 847 F.2d at 1509-10. Here, due diligence is not necessary to discover the misrepresentation as Plaintiff concedes in the record that he knew of the discrepancy. Therefore, as the discrepancy was already known, this case is inapposite.

Even considering the facts in the light most favorable to Plaintiff, his allegations indicate that he chose to believe the representations of the Independent Producers despite understanding what he read in the Rider and the in Policies. In his deposition testimony, Plaintiff stated that he pressed the Independent Producer for an explanation why she stated he would receive 90% of the face value of Policy 1 when the Rider clearly indicated the potential for 24% of the eligible death benefit for chronic illness. Plaintiff knew there was a contradiction — "that's why I had a

question." ECF No. [50-Exhibit 2] Depo. at 129, line 23. He was told to not worry about it and acted upon her statements that he would receive 90% of the "face value," contradicting the clear language of the Policies. Plaintiff conceded "that's why I decided to take this insurance, because of what Elena told me." *Id*. at 130, line 1-2. Plaintiff identified the contradiction, addressed it, then accepted the oral representation despite it being directly and unambiguously contradicted by the written agreement.

In considering the facts in the light most favorable to Plaintiff as the nonmovant and drawing all reasonable inferences in his favor, Defendant has established that upon these facts, no reasonable juror could find that Plaintiff justifiably relied on the oral misrepresentations of the Independent Producers. No genuine issue of material fact exists and summary judgment is warranted on Count III.

### C.  Unjust Enrichment - Count IV

It is undisputed that the parties entered two express, written contracts for Policies 1 and 2. SMF, RSMF ¶¶10, 11, 12, 31, 32, 33. The contents and terms of the Policies and Riders is also undisputed. SMF, RSMF ¶¶ 8, 9, 13, 16, 17, 18, 19, 20, 29, 30, 34.

#### a.  Written contracts exist

Defendant argues that Florida law prohibits a plaintiff from pursuing a claim for unjust enrichment when there is a written contract. It is "upon the showing that an express contract concerning the same subject matter exists, the unjust enrichment claim necessarily fails." *Real Est. Value Co. v. Carnival Corp.*, 92 So.3d 255, 263 (Fla. 3d DCA 2012). Defendant maintains that there is no dispute of material fact that two express contracts exist. ECF No. [48] at 9.

Plaintiff responds that there is a genuine issue of material fact whether Plaintiff can prevail on his claim of unjust enrichment. ECF No. [57] at 8. Plaintiff reasons that unjust enrichment is

rooted in principles of equity, and by its nature allows this claim to coexist with a claim for breach of contract.

Defendant replies that Plaintiff's lone citation to *ThunderWave* assails his own argument. ECF No. [61] at 6. *ThunderWave* held that Florida law permits the coexistence of an *oral* contract and a claim for unjust enrichment. *ThunderWave Inc., v. Carnival Corp.*, 954 F.Supp. 1562, 1566 (S.D. Fla. 1997). Here, no oral contract exists. Rather, there are two written contracts which form the basis of Plaintiff's claims for breach of contract.

To establish that it is entitled to summary judgment, Defendant relies on *Doral Collision Ctr., Inc. v. Daimler Tr.*, 341 So.3d 424 (Fla. 3d DCA 2022). In *Doral*, summary judgment was affirmed upon determination that an express contract existed. *Id*. at 430. "A claim for unjust enrichment is often referred to as a quasi-contract, or a contract implied in law." *Id*. at 429. *Doral* stands for the proposition that "it is well settled that a plaintiff 'cannot pursue an equitable theory, such as unjust enrichment . . . to prove entitlement to relief if an express contract exists.'" *Id*. at 430 (citing *Fulton v. Brancato*, 189 So.3d 967, 969 (Fla. 4th DCA 2016)). Appellate courts in Florida have also reversed and remanded decisions of trial courts that improperly allow claims for unjust enrichment despite determination that a contract existed. *See Fulton v. Brancato*, 189 So.3d 967, 969 (Fla. 4th DCA 2016) ("the trial court should have directed a verdict on the seller's claim for unjust enrichment . . . because the jury found that there was an express agreement.").

Plaintiff's argument that there may be "circumstances surrounding the agreement" between Plaintiff and the Independent Producers that could allow a jury to "conclude that Defendant was unjustly enriched, even if the written contract is considered," is unavailing. ECF No. [57] at 9. Plaintiff provides no authority for this assertion. Alternatively, Plaintiff claims it is "in pleading

unjust enrichment alongside a breach of contract claim, [that Plaintiff] raises a genuine issue of material fact" proper for a jury. *Id*. Plaintiff does not cite an authority for this assertion either.

Plaintiff misconstrues what a material fact is. That Plaintiff is setting forth a claim of unjust enrichment does not, as an independent act, create a genuine issue of material fact that would allow him to avoid summary judgment. Additionally, Plaintiff's statements that a written agreement does not foreclose the possibility of an unjust enrichment claim contradicts Florida law. As such, Plaintiff has failed to bring forth any basis to permit him to pursue his claim for unjust enrichment while express written contracts exist.

### b. Payment was made for a benefit conferred

Defendant argues that Plaintiff's assertion that unjust enrichment is proper because Defendant willfully accepted premium payments for the Policies fails. Defendant reasons that it is undisputed that the parties contracted for insurance coverage and Plaintiff paid for that coverage. ECF No. [48] at 10. Further, Defendant points out that it accepted Plaintiff's claims for Chronic Illness and offered payments based on the calculations provided for in the written contract. *Id*. Therefore, Defendant maintains that it was "not enriched in any way" as its payments were "commensurate with the terms of the policy and Plaintiff's premium payments." *Id*. For support of its argument that Florida law is well established that unjust enrichment cannot exist when payment has been made for the benefit conferred, Defendant cites to *N.G.L. Travel Assocs. v. Celebrity Cruises, Inc.*, 764 So.2d 672 (Fla. 3d DCA 2000) and *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So.2d 322 (Fla. 5th DCA. 2007).

Plaintiff does not respond to this argument. Defendant asserts that the failure to counter the argument is "likely because he cannot." ECF No. [61] at 7. Defendant points out that Plaintiff did not claim a failure to properly calculate benefits according to the Policies but instead argues that

other terms outside of the Policies should apply. Defendant contends that the proper amounts were set based upon the agreed upon terms in the Policies, Plaintiff paid his premiums, and Defendant paid the appropriate benefits. *Id*. Therefore, a claim of unjust enrichment fails as Plaintiff received what he paid for. *Id*.

Defendant has established that there are no genuine disputes of material fact, and it is entitled to judgment as a matter of law on Count IV.

### D.  Negligent Misrepresentation - Count VI

Negligent misrepresentation requires proof that (1) that there was a misrepresentation of material fact Plaintiff believed to be true but was false; (2) Defendant should have known the representations were false; (3) Defendant intended to induce Plaintiff to rely on the misrepresentation; and (4) that Plaintiff acted in justifiable reliance upon the misrepresentation, resulting in injury. *Arlington Pebble Creek, LLC v. Campus Edge Condo. Ass'n, Inc.*, 232 So.3d 502, 505 (Fla. 1st DCA 2017).

Regarding justifiable reliance, Plaintiff argues that the standard is "subjective. . . inherently intertwined with individual perceptions and circumstances. . . a question of fact best suited for a jury's consideration." *Id*. For support that justifiable reliance requires an analysis "from Plaintiff's viewpoint," Plaintiff cites to bankruptcy cases, *See Field v. Mans*, 516 U.S. 59, 76 (1995); *In re Lowery*, 440 B.R. 914, 925 (Bankr. N.D. Ga. 2010); *In re Vann,* 67 F.3d 277, 281 (11th Cir. 1995).

Defendant argues that Plaintiff's sole focus on justifiable reliance as "nuanced" and "inherently subjective" is unavailing. *Id*. Instead, reliance is unjustified as a matter of law where the written terms of an agreement directly contradict alleged oral representations. *Id*.

Defendant points out that "Florida law is clear that 'reliance on fraudulent representations is unreasonable as a matter of law where the alleged misrepresentations contradict the express

terms of the ensuing written agreement.'" *Zarella v. Pacific Life Ins. Co.,* 755 F.Supp. 2d 1231 (S.D. Fla. Mar. 29, 2011) (citing *Eclipse Med., Inc. v. Am. Hydro–Surgical Instruments*, Inc., 262 F.Supp.2d 1334, 1342 (S.D. Fla. Jan. 20, 1999)) (applying Florida law).

Plaintiff cannot prevail on his negligent misrepresentation claim. The Court has already determined that Plaintiff cannot establish his justifiable reliance on the oral representations after analyzing Plaintiff's fraud in the inducement claim. Moreover, Plaintiff has failed to point out any record evidence that Defendant intended to induce Plaintiff to rely on any alleged misrepresentation, also a necessary element. Defendant has met its burden that there is no genuine dispute of material fact, and it is entitled to judgment as a matter of law on Count VI, negligent misrepresentation.

Consequently, Defendant, as movant, has met its burden and established that there is no genuine dispute as to any material fact on the claims in this action, and is entitled to judgment as a matter of law on Counts I, II, III, IV, and VI.

## V.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment**, ECF No. [48]**, is **GRANTED**.

2. Defendant's Motion in Limine, **ECF No. [51], IS DENIED AS MOOT.**

3. Final judgment for Defendant will be entered in a separate order.

4. The Clerk of Court is directed to **CLOSE** this case.

Case No. 22-cv-23513-BLOOM/Torres

**DONE AND ORDERED** in Chambers at Miami, Florida, on February 8, 2024.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record